IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TIMOTHY WOODS, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 21-cv-03184 |
| NEIL OIL COMPANY, INC., and<br>DAVID NEIL, individually | ) |
|       Defendants. | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This case is before the Court on the Combined Motion to Dismiss Counts III, IV, V, and VI of Plaintiff's Complaint (d/e 14) filed by Defendants Neil Oil Company, Inc. and David Neil.  For the reasons that follow, Defendants' Motion is GRANTED IN PART as to Counts IV and VI of Plaintiff's Complaint (d/e 1) and DENIED IN PART as to Counts III and V.

### I. BACKGROUND

In August 2021, Plaintiff Timothy Woods filed a Complaint against Neil Oil Company, Inc. ("Neil Oil"), and David Neil, bringing claims against Defendants for: failing to pay Plaintiff for sick leave

in violation of the Families First Coronavirus Response Act, 29 C.F.R. § 826 et. seq. ("FFCRA") (Count I); retaliatory discharge in violation of the FFCRA (Count II); retaliating against Plaintiff in violation of the Illinois Whistleblower Act, 740 ILCS 174/1, et seq. (the "IWA") (Count III); common law retaliatory discharge (Count IV); trespass (Count V); intentional infliction of emotional distress (Count VI); tortious interference with prospective business relations (Count VII); and defamation (Count VIII).  Defendants have moved to dismiss Counts III, IV, V, and VI (but not Counts I, II, VII, or VIII) of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Tobey v. Chibucos, 890 F.3d 634, 639 (7th Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  When considering a Rule 12(b)(6) motion, the Court will

not accept legal conclusions as sufficient to state a claim for relief. See McCauley v. City of Chicago, 671 F.3d 611, 617 (7th Cir. 2011). Rather, the Court must determine based on a context-specific evaluation whether the factual allegations rise "above the speculative level." Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### III. FACTS

The following facts are alleged in Plaintiffs' Complaint and are accepted as true at the motion to dismiss stage.

Plaintiff worked for Neil Oil from approximately March 1, 2020, through December 2, 2020. D/e 1, ¶¶ 10–11. David Neil was Plaintiff's supervisor and controlled all aspects of his employment. Id. at ¶ 14. Plaintiff typically worked five-day shifts twice a month, although he sometimes worked more, and was paid $15.00 per hour, totaling $360 per day. Id. at ¶ 18–19. Neil Oil's policy was to pay their employees in advance based on anticipated work on the 15th and 30th of each month. Id. at ¶ 20.

During November 2020, Plaintiff was scheduled to work from November 1 through November 5 and from November 18 through November 30. Id. at ¶ 22. After Plaintiff's shift on November 19,

2020, he tested positive for Covid-19.  Id. at ¶¶ 24–25.  Plaintiff was directed by the Marion County Department of Public Health ("MCPH") to quarantine at his home for at least fourteen days, in accordance with the Center for Disease Control's ("CDC") guidelines.  Id. at ¶ 26.  Shortly after, Plaintiff sent David Neil the paperwork confirming his positive Covid-19 diagnosis.  Id. at ¶ 27.  David Neil responded by instructing Plaintiff to "[t]ake care of the trains until you are truly sick . . . [w]hat I am trying to tell you is you don't have it [Covid-19] if you don't have a fever, can smell, and taste."  Id. at Ex. B.

Plaintiff quarantined at his home while recovering from Covid-19 and did not come to work.  Id. at 28.  In response, on approximately November 19, 2020, Neil ordered Plaintiff to either "get to work or resign."  Id. at Ex. C.  Then, on November 20, 2020, Neil asked Plaintiff to send documentation proving his positive Covid-19 diagnosis again despite already having received said documentation.  Id. at ¶ 31.  Later that day, Plaintiff submitted his resignation to Neil via text message, saying that he would continue to quarantine at home in accordance with CDC and IDPH guidelines.  Id. at ¶ 34.

Further, David Neil accused Plaintiff of lying about his Covid-19 diagnosis, id. at ¶ 37, and threatened Plaintiff by saying, "[w]hen I get done with you, no one will even consider hiring you." Id. at exh. H.  Additionally, an individual who identified himself as "Tim" showed up at Plaintiff's home and entered upon his property without permission to take back company keys, id. at ¶38, at the direction of Neil Oil.  Id. at ¶¶ 106–07.

Plaintiff alleges that as a result of Defendants' behavior, he has suffered loss of income, benefits, career opportunities, as well as humiliation and emotional distress.  Id. at ¶ 87.

### IV. ANALYSIS

**A.   Plaintiff Has Adequately Alleged in Count III That Neil Oil Violated the Illinois Whistleblower Act by Retaliating Against Plaintiff.**

The Illinois Whistleblower Act prohibits employers from retaliating against employees for "refusing to participate in an activity that would result in a violation of a State or Federal law, rule, or regulation." Sardiga v. N. Tr. Co., 948 N.E.2d 652, 656 (Ill. App. 2011); see 740 ILCS 173/20.  To state a claim for retaliatory discharge under the IWA, "a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation

of a state or federal law, rule, or regulation and (2) his employer retaliated against him because of that refusal." Id. at 657.

Plaintiff has alleged that David Neil asked Plaintiff to attend work despite the fact that Plaintiff had recently been diagnosed with COVID-19, in violation of Illinois Department of Public Health ("IDPH") COVID-19 quarantine guidelines and a quarantine order issued by the Marion County Department of Public Health ("MCPH"). Plaintiff has also alleged that he refused to violate the MCPH order and the IDPH quarantine guidelines by returning to work when asked to do so and that Neil Oil terminated Plaintiff's employment in retaliation for this refusal. Defendant argues that these allegations are insufficient to state a claim under the IWA because the IDPH guidelines that Plaintiff refused to violate do not "rise to the level of a 'law, rule, or regulation'" under the IWA. D/e 14, p. 4.

The Northern District of Illinois recently addressed an argument substantially similar to Defendants' in Griffin-Thomas v. La Rabida Children's Hosp., No. 21-CV-02033, 2022 WL 103705 (N.D. Ill. Jan. 11, 2022). In Griffin-Thomas, the plaintiff sued her former employer under the IWA for firing her after she refused to

come into work with symptoms of acute respiratory disease. The defendant moved to dismiss, arguing that the plaintiff had alleged only a violation of the city of Chicago's municipal COVID-19 quarantine order and that the municipal quarantine order was not a "state or federal law, rule, or regulation" as required by the IWA. Id. at *4. The Northern District denied the defendant's motion to dismiss and held that Chicago's COVID-19 quarantine order was a law, rule, or regulation under the IWA because the order served as the "enforcement arm" of 77 Illinois Administrative Code 690.1310(c), which delegates the IDPH's powers "to issue orders for isolation, quarantine, or closure" to local health departments. Id. at *5.

Here, as in Griffin-Thomas, Plaintiff has alleged that he was fired for refusing to violate a local quarantine order. As in Griffin-Thomas, it is plausible that the local health department order in question was issued pursuant to the authority granted in 77 Illinois Administrative Code 690.1310(c), which states that:

> [T]he Department has the general authority <u>to delegate to a certified local health department, for the purpose of local administration and enforcement</u>, the duties that the Department is authorized to enforce. Due to the need for

> immediate action to respond to a threat of a dangerously contagious or infectious disease, the <u>Department delegates its powers to issue orders for isolation, quarantine or closure</u>; physical examinations and tests; collection of specimens; administration of vaccines, medications and treatments; and observation and monitoring and to issue and enforce orders to certified local health departments within the State of Illinois.

<u>Id.</u> (emphasis added).

At the pleading stage, all that Plaintiff is required to plausibly allege in order to state an IWA claim is that his agreement to violate IDPH guidelines and/or the Marion County Department of Public Health's order as requested would have resulted in a violation of some law, rule, or regulation.  See <u>Sharenow v. Drake Oak Brook Resort LLC</u>, No. 20-CV-06337, 2022 WL 2715854, at *2 (N.D. Ill. July 13, 2022) (finding that employee plausibly alleged an IWA retaliation claim where employee claimed she was fired for refusing to violate Illinois agency COVID-19 guidelines and violation of guidelines would necessarily have violated gubernatorial executive order requiring businesses to follow guidelines).  Construing the allegations in Plaintiff's Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged that

attending work while sick with COVID-19 would have caused Plaintiff to violate some "State or federal law, rule, or regulation."

**B.    Because Plaintiff Has Not Alleged That He Was Terminated for "Whistleblowing," Count IV Does Not State a Claim for Common Law Retaliatory Discharge.**

In Count IV of Plaintiff's Complaint, Plaintiff alleges that Neil Oil committed the common-law tort of retaliatory discharge by terminating Plaintiff's employment. "To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy." Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, 135 N.E.3d 891, 896 (Ill. 2019). "[T]he public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law." Id.

Defendants argue that common law retaliatory discharge claims are available in only two situations: when an employee is terminated for exercising his or her rights under the Workers' Compensation Act, or when an employee is terminated for reporting an employer's criminal conduct, either to law enforcement

personnel or to the employer itself.  D/e 14, p. 5.  Plaintiffs argue that Defendants' reading of Illinois law is overly narrow.

Illinois courts have consistently held that a terminated employee can bring a retaliatory discharge claim in "only two situations: (1) where the discharge stems from exercising rights pursuant to the Workers' Compensation Act or (2) where the discharge is for 'whistleblowing' activities, namely, the reporting of illegal or improper conduct." Sutherland v. Norfolk S. Ry. Co., 826 N.E.2d 1021, 1026 (Ill. 2005).  "The Illinois Supreme Court has defined 'public policy' only within these limited bounds and thus has consistently sought to restrict the common law tort of retaliatory discharge." Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 629 (7th Cir. 2009); see Irizarry v. Illinois Cent. R. Co., 879 N.E.2d 1007, 1011–12 (Ill. App. 2007) (collecting decisions in which Illinois appellate courts refuse to expand scope of retaliatory discharge tort).

Defendants' suggestion that only whistleblowing involving "criminal" conduct can give rise to a retaliatory discharge claim is incorrect.  See Webber v. Wight & Co., 858 N.E.2d 579, 595 (Ill. App. 2006) (noting that "a plaintiff can succeed on a retaliatory

discharge claim by showing that the employer's conduct was improper, yet not necessarily illegal" and affirming decision allowing employee to testify to his good-faith belief that employer's conduct had been illegal). Nevertheless, under Illinois law, a plaintiff must allege that he was fired for being a "whistleblower"—i.e., for reporting some improper conduct by his employer—in order to state a retaliatory discharge claim that does not involve worker's compensation.

Here, Plaintiff has certainly alleged that Defendants engaged in improper conduct, but Plaintiff has not alleged that he reported Defendants' allegedly improper conduct to anyone other than David Neil himself. Cf. Brown v. Biomat USA, Inc., No. 20-CV-05437, 2021 WL 3187599, at *4 (N.D. Ill. July 28, 2021) (denying motion to dismiss retaliatory discharge claim where plaintiff claimed that he was fired for reporting, to the CDC, his employer's violations of executive orders imposing COVID-related social distancing and capacity reduction requirements). Under Illinois law, "the intent of the employee to blow the whistle is vital to a claim of retaliatory discharge." Michael v. Precision All. Grp., LLC, 952 N.E.2d 682,

688 (Ill. App. 2011).  Plaintiff's common law retaliatory discharge claim must, therefore, be dismissed.

Plaintiff argues that under DiPietro v. GATX Corp., 167 N.E.3d 247 (Ill. App. 2020), violations of "policies affecting the health and safety of citizens" can give rise to a retaliatory discharge claim even in the absence of any attempt by Plaintiff to report those violations. D/e 19, p. 5.  DiPietro, however, involved a plaintiff who claimed that she had been retaliated against for complaining to her employer about an employer policy that the plaintiff believed violated the Employee Sick Leave Act, 820 ILCS 191/1 et seq.  The DiPietro court concluded that the complained-of policy did not, in fact, violate that Act, and affirmed the trial court's decision to grant the employer's motion for summary judgment.  Because the plaintiff in DiPietro was a whistleblower, the decision in DiPietro does not support for Plaintiff's argument that a non-whistleblower may bring a retaliatory discharge claim outside of the workers' compensation context.

## C. Plaintiff Has Adequately Alleged the Elements of Trespass in Count V.

In Illinois, trespass is defined as "an intentional invasion of the exclusive possession and physical condition of land." Dietz v. Illinois Bell Tel. Co., 507 N.E.2d 24, 26 (Ill. App. 1987). An individual who knowingly causes a third party to invade another's land can be held liable for the intrusion. Id. "Thus, a person who aids, abets, assists, or directs the commission of a trespass by another is liable for trespass." Id.

Defendants argue that Plaintiff has not stated a claim for trespass against Neil Oil in Count V because Plaintiff does not allege that "Tim," the individual who entered Plaintiff's house without permission, was an employee of Neil Oil who was "acting on behalf of Neil Oil" or that he was an employee of Neil Oil. D/e 14, p. 7. This case, however, is still at the pleading stage, and Plaintiff is entitled to the benefit of every reasonable inference that can be made in his favor. Plaintiff has alleged that Tim was acting "at the direction of Neil" and "ostensibly intending to take back company keys" when Tim entered Plaintiff's home without permission. D/e 1, ¶ 38. Plaintiff also alleges that Tim's trespass was "committed in

furtherance of Tim's . . . employment" and that Neil Oil directed Tim to enter Plaintiff's home "with knowledge that their conduct w[ould], to a substantial degree of certainty, result in an intrusion." Id., ¶¶ 105, 107.  These allegations are more than enough to give rise to the reasonable inferences that Tim was an employee of Neil Oil and that Neil Oil knowingly caused Tim to invade Plaintiff's property.  Accordingly, Plaintiff has stated a claim for trespass.

**D.     David Neil's Alleged Actions Do Not Rise to the Level of "Extreme and Outrageous" Conduct, As Required to State a Claim for Intentional Infliction of Emotional Distress.**

Count VI of Plaintiff's Complaint alleges an intentional infliction of emotional distress claim against David Neil.  To state a claim for intentional infliction of emotional distress, Plaintiff must show that: (1) the conduct was truly extreme and outrageous; (2) the actor intended for his conduct to inflict severe emotional distress or knew that there was a high probability that severe emotional distress would result from his conduct, and (3) the conduct actually caused severe emotional distress.  Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001).

Plaintiff alleges that David Neil questioned his Covid-19 diagnosis and demanded that he return to work or resign.  D/e 1,

¶ 112.  Plaintiff also alleges that David Neil accused him of fraud and threatened his future employment opportunities by insisting he would ensure that Plaintiff not get another job.  Id.  Additionally, Plaintiff alleges that David Neil caused one of Neil Oil's employees to enter Plaintiff's house without permission while Plaintiff was bedridden due to Covid-19 and while Plaintiff's child was present.  Id.  Plaintiff alleges that these actions caused Plaintiff to suffer severe emotional distress.  Id. at ¶ 113–15.

However, the facts alleged by Plaintiff, even when viewed in the light most favorable to Plaintiff, do not rise to the level of "extreme and outrageous conduct."  Under Illinois law, "[c]onduct is outrageous only when so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community[,]" Kyung Hye Yano v. El-Maazawi, 651 F.App'x 543, 548 (7th Cir. 2016).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not extreme and outrageous conduct.  Bos. V. U.S. Steel Corp., 816 F.3d 455, 467 (7th Cir. 2016).

Cases within the employment context are generally held to a higher standard in Illinois courts because "personality conflicts, job

performance evaluations, or job transfers are unavoidable and often result in stress.  [And] if such stress formed the basis for the tort of [IIED], virtually every employee would have a cause of action." Boutros v. Park Plaza Nw. Home for the Aged, No. 16-CV-5133, 2016 WL 6995568, at *7 (N.D. Ill. Nov. 30, 2016) (quoting Lewis v. Cotton, 932 F. Supp. 1116, 1119 (N.D. Ill. 1996)).

In Carroll v. YMCA of Metro Chicago, LLC, No. 13-CV-9307, 2015 WL 149024 (N.D. Ill. Jan. 9, 2015), Plaintiff sued her supervisor for an alleged pattern of sexual and ethnic harassment during her employment at the YMCA.  Defendant was accused of repeatedly touching Plaintiff inappropriately, forcing her to remain in his office for hours at a time, and preventing Plaintiff from exiting rooms.  The court in Carroll dismissed Plaintiff's intentional infliction of emotional distress claim because the alleged conduct was not outrageous enough, observing that stating that "[o]utrageous conduct exists 'where recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. at 5 (citing Doe v. Calumet City, 641 N.E.2d 498, 507 (Ill. 1994)).  The court also observed that "[i]n the employment context even 'a

continuous series of intentionally discriminatory acts' does not necessarily constitute IIED in Illinois." Id. (quoting Van Stan v. Fancy Colours & Co., 125 F.3d 563, 568 (7th Cir. 1997)).

The court in Carroll distinguished several Illinois Supreme Court cases involving, for example, a police officer's refusal to intervene and help save a sexual assault victim while an intruder raped the victim's daughter, a decade-long pattern of domestic abuse involving frequent physical injury, and comments made on-air radio mocking a caller's wife and child who suffered from a disfiguring disease. Id. at 5.

Here, as in Carroll, the Court does not condone the Defendant's alleged conduct. However, the facts alleged by Plaintiff involve only run-of-the-mill bad behavior, rather than truly outrageous conduct. David Neil repeatedly demanded that Plaintiff come into work while sick, and then harangued, insulted, and eventually threatened to fire Plaintiff when Plaintiff refused. David Neil also vowed to prevent Plaintiff from securing other employment in the future and sent an employee to trespass in Plaintiff's home and retrieve Plaintiff's work keys. This pattern of conduct, viewed in the light most favorable to Plaintiff, is rude and highly

inappropriate, but "[c]onduct may be blameworthy, illegal, highly inappropriate, and even reprehensible without qualifying as IIED," especially in the employment context.  Id.  Accordingly, the Court concludes that Plaintiff has not stated a claim for intentional infliction of emotional distress.

## V. CONCLUSION

For the reasons stated, Defendants' Combined Motion to Dismiss Counts III, IV, V, and VI of Plaintiff's Complaint (d/e 14) is GRANTED IN PART as to Counts IV and VI and DENIED IN PART as to Counts III and V.  Defendants shall answer Plaintiff's Complaint no later than September 5, 2022.

ENTER:  August 15, 2022

FOR THE COURT:

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE